UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARR INDEMNITY & LIABILITY
COMPANY,

                              Plaintiff,

                -v.-

AGCS MARINE INSURANCE COMPANY,

                              Defendant.

20 Civ. 5321 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Starr Indemnity & Liability Company ("Starr" or "Plaintiff") and Defendant AGCS Marine Insurance Company ("AMIC" or "Defendant"), both insurers of non-party assured R.E. Staite Engineering, Inc. ("R.E. Staite"), dispute which of them is liable for the costs of defending R.E. Staite in a personal injury lawsuit filed in state court in California (the "California matter"). Starr defended R.E. Staite in the California matter until it was discontinued in June 2019; AMIC did not participate. Starr now seeks reimbursement from AMIC for $164,053.77 in costs Starr incurred in the defense effort. AMIC has moved to dismiss Starr's Second Amended Complaint (the "SAC"), which is the operative pleading in this matter, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis that the relevant insurance contracts did not impose upon AMIC a duty to defend R.E. Staite in the California matter and do not now entitle Starr to reimbursement of its incurred defense costs. For the reasons set forth in this Opinion, the Court denies AMIC's motion.

## BACKGROUND[1]

### A.    Factual Background

Starr is a Texas company with its principal place of business in New York, New York.  (SAC ¶ 1).  At all relevant times, Starr was the assurer on R.E. Staite's Commercial Marine Liability Policy (the "CML Policy").  (*Id.* at ¶ 2).[2] AMIC is an Illinois corporation registered to do business in, among other places, California and New York, per the records of the California Department

---

[1]    This Opinion draws its facts from Plaintiff's Second Amended Complaint ("SAC" (Dkt. #24)); the AGCS Marine Insurance Company ("AMIC") Protection and Indemnity Policy ("P&I Policy" (Dkt. #24-1, 24-2)); the First Amended Complaint of Daniel Lerma filed in the Superior Court of the State of California for the County of San Diego ("Lerma Complaint" or "Lerma Compl." (Dkt. #24-3)); the Starr Indemnity & Liability Company ("Starr") Commercial Marine Liability Policy ("CML Policy" (Dkt. #17-1)); AMIC's profile on the California Department of Insurance website (Dkt. #32-2; and AMIC's profile on the New York State Department of Financial Services website, available at https://myportal.dfs.ny.gov/web/guest-applications/ins.-company-search (last visited July 13, 2021).

While Starr did not attach the CML Policy to the SAC, the SAC repeatedly references the CML Policy and heavily relies upon its terms and effects.  Thus, the CML Policy may properly be considered at this stage.  *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  The Court may also take judicial notice of, and consider in deciding the motion to dismiss, AMIC's profile in databases of registered business entities maintained by the California Department of Insurance and the New York State Department of Financial Services, because the information set forth therein is not subject to reasonable dispute.  *See Dixon* v. *von Blanckensee*, 994 F.3d 95, 101-02 (2d Cir. 2021) ("When ruling on a Rule 12(b)(6) motion, [courts] may also consider 'matters of which a court may take judicial notice.'" (quoting *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))); *id.* at 102 (noting that a court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998), and citing Fed. R. Evid. 201(b))).

The Court accepts as true, for purposes of resolving the instant motion, the well-pleaded allegations of Starr's pleadings.

[2]    The Court notes that the copy of the CML Policy filed at docket entry number 17-1 covers the time period from September 8, 2013, to September 8, 2014.  (Dkt. #17-1).  The events giving rise to the underlying California matter occurred on December 23, 2015 (Lerma Compl. ¶ 1), outside this period.  However, the Court accepts as true Starr's representation that the CML Policy continued in effect through the relevant period.  (SAC ¶ 2).

of Insurance and the New York State Department of Financial Services.[3]  At all

relevant times, AMIC was the lead assurer on R.E. Staite's Protection and

Indemnity Policy (the "P&I Policy").  (*Id.* at ¶ 4).  The other assurers on the P&I

Policy were Starr and Zurich American Insurance Co.  (*Id.* at ¶ 5).  R.E. Staite

is a California corporation with a business address in San Diego, California.

(Lerma Compl. ¶ 3; *see also* CML Policy 2; P&I Policy 1).

On or about December 3, 2018, non-party Daniel A. Lerma filed an

amended complaint against R.E. Staite in the Superior Court of the State of

California for the County of San Diego, which complaint alleges that while

standing on a barge in navigable waters in San Diego Harbor on December 23,

2015, Mr. Lerma was severely injured as a result of the negligent operation of a

shoreside crane by employees of R.E. Staite.  (Lerma Compl. ¶ 1).  The barge on

which Mr. Lerma stood was also owned by R.E. Staite.  (SAC ¶ 13).  At all times

relevant, R.E. Staite was covered by the CML Policy and the P&I Policy.

(*Id.* at ¶¶ 13, 15).

---

[3]     Starr alleges that AMIC "is a foreign corporation said to be registered in Munich,
Germany, and organized under the laws of the Federal Republic of Germany, with its
principal place of business at Fritz-Schäffer-Strasse 9, 81737 Munich, Germany
Commercial Register: Munich, HRB 208312."  (SAC ¶ 3).  However, the Court accepts as
accurate the records of the California Department of Insurance and the New York State
Department of Financial Services, which records indicate that AMIC is an Illinois
corporation.  *See L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)
("[W]e draw all facts — which we assume to be true *unless contradicted by more specific
allegations or documentary evidence* — from the Complaint and from the exhibits
attached thereto[.]" (emphasis added)).

Starr was notified of the claim by brokers requesting coverage for the alleged incident under the CML Policy. (SAC ¶ 17). On May 13, 2019, Starr's Assistant Vice President & Regional Manager of Marine Claims was made aware that R.E. Staite was also insured under the P&I Policy, and concluded that coverage for defense costs existed under the P&I Policy. (*Id.* at ¶ 18). On May 14, 2019, Starr advised the broker that the claim should have been opened under the P&I Policy instead of the CML Policy, and, further, that it should have been handled by AMIC instead of Starr. (*Id.*). Upon being notified of the claim by the broker, AMIC rejected the tender of defense on behalf of R.E. Staite. (*Id.*).

Starr proceeded to defend R.E. Staite in the California matter, which matter was discontinued on June 27, 2019. (SAC ¶ 19). In total, Starr paid $164,053.77 defending R.E. Staite. (*Id.* at ¶ 21). Starr reserved its rights to seek recovery from AMIC for legal fees that it accrued in its defense of R.E. Staite. (*Id.* at ¶ 20).

## B.    Procedural Background

Starr filed the original complaint in this matter on July 10, 2020 (Dkt. #1), and an amended complaint on July 30, 2020 (Dkt. #9). On October 6, 2020, AMIC filed a pre-motion letter concerning its anticipated motion to dismiss the amended complaint (Dkt. #17), to which letter Starr responded on October 13, 2020 (Dkt. #22). The Court held the initial pretrial conference on October 14, 2020, during which conference the Court set a schedule for Starr to further amend its complaint and for briefing of AMIC's

4

motion to dismiss.  (Minute Entry for October 14, 2020).  On October 23, 2020, Starr filed the SAC.  (Dkt. #24).  In accordance with a modified briefing schedule approved by the Court (*see* Dkt. #26), AMIC filed its motion to dismiss and supporting papers on November 27, 2020 (Dkt. #27-29); Starr filed its memorandum in opposition on December 30, 2020 (Dkt. #30); and AMIC filed its reply memorandum and declaration on January 8, 2021 (Dkt. #31-32).  AMIC's motion is now fully briefed and ripe for resolution.

### DISCUSSION[4]

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

AMIC moves for dismissal of the SAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  (Def. Br. 1).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In determining the viability of Plaintiff's claims, the Court must accept as true all well-pleaded factual allegations in the complaint.  *Id.* at 678.  Additionally, the Court may consider not only the complaint itself, but also any written

---

[4]     For ease of reference, the Court refers to AMIC's Memorandum of Law in Support of Its Motion to Dismiss as "Def. Br." (Dkt. #28); Starr's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #30); and AMIC's Reply Memorandum of Law as "Def. Reply" (Dkt. #31).

instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, and documents that are "integral" to the complaint even if they are not incorporated by reference. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

**B.      California Law Applies to the Insurance Policies at Issue**

Maritime contracts, including the CML Policy and the P&I Policy at issue in this case, are governed by general federal maritime law.  *See Wilburn Boat Co.* v. *Fireman's Ins. Co.*, 348 U.S. 310, 313 (1955).  However, "[i]n the field of maritime contracts … the National Government has left much regulatory power in the States."  *Id.*  Because there is "no specific federal rule governing construction of maritime insurance contracts," *Com. Union Ins. Co.* v. *Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir. 1999), "federal courts look to state law for principles governing maritime insurance policies, and apply federal maritime choice of law rules to determine which state's law to apply," *id.* (internal citations omitted) (citing *Wilburn Boat*, 348 U.S. at 319-21; *Advani Enters., Inc.* v. *Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998); *Sundance Cruises Corp.* v. *Am. Bureau of Shipping*, 7 F.3d 1077, 1080 (2d Cir. 1993)).

In *Lauritzen* v. *Larsen*, 345 U.S. 571 (1953), the Supreme Court directed that in order to determine which state law applies to a maritime insurance

policy, courts must "ascertain[] and valu[e] points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved." *Id.* at 582. These points of contacts include "[i] any choice-of-law provision contained in the contract; [ii] the place where the contract was negotiated, issued, and signed; [iii] the place of performance; [iv] the location of the subject matter of the contract; and [v] the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Advani Enters.*, 140 F.3d at 162. *See also State Trading Corp. of India, Ltd.* v. *Assuranceforeningen Skuld*, 921 F.2d 409, 417 (2d Cir. 1990) (discussing choice-of-law factors set forth in *Lauritzen* and the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971)).

Because this dispute implicates the parties' respective duties under the CML Policy and the P&I Policy, the Court considers these points of contact with respect to both contracts. With respect to the CML Policy, to which Starr and R.E. Staite are parties: (i) the contract does not contain a choice-of-law provision (*see generally* CML Policy); (ii) the contract was signed in San Francisco, California (*id.* at 1); (iii) notice of covered occurrences is to be sent to entities located in California (*id.* at 24); (iv) the location of the subject matter of the contract is San Diego, California (*id.* at 3, 34); and (v) Starr is a Texas corporation with its principal place of business in New York, New York (SAC ¶ 1), and R.E. Staite is a California corporation with a business address in San Diego, California (Lerma Compl. ¶ 3). With respect to the P&I Policy, to which R.E. Staite, AMIC, Starr, and non-party Zurich American Insurance Co. are

parties: (i) the contract does not contain a choice-of-law provision (*see generally* P&I Policy); (ii) the contract issued from Seattle, Washington (P&I Policy, Dkt. #24-1 at 3); (iii) the place of performance in this case is California, where the California matter was litigated (*see generally* Lerma Compl.); (iv) the geographic scope of coverage under the P&I Policy is unclear (*see generally* P&I Policy) but indisputably includes San Diego, where the subject accident occurred; and (v) AMIC is an Illinois corporation registered to do business in both California and New York.

Although these contacts — particularly the P&I Policy's contacts — do not all point in the same direction, California emerges nevertheless as the predominant hub of relevant activity. Accordingly, the Court agrees with Defendant that California law is the appropriate state law to look to in interpreting the insurance policies at issue and resolving this dispute. (*See* Def. Br. 8). *Cf. Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc.* v. *Henderson*, Nos. 10 Civ. 8033 (PGG), 11 Civ. 3869 (PGG), 2013 WL 1245451, at *3-6 (S.D.N.Y. Mar. 26, 2013) (applying New York law over Maine law based on the predominance of contacts with New York); *St. Paul Fire & Marine Ins. Co.* v. *Novus Int'l, Inc.*, No. 09 Civ. 1108 (BSJ) (THK), 2011 WL 6937593, at *5 (S.D.N.Y. Dec. 28, 2011) (applying New York law over Missouri law).[5]

---

[5]     Starr argues that the question of which state's law applies is a disputed question of fact that cannot be decided at the motion to dismiss stage. (Pl. Opp. 8-10). However, the facts relevant to the choice-of-law analysis in this matter are not subject to reasonable dispute, even if the parties disagree about how the Court should weigh those facts. That being the case, the Court concludes that it is appropriate to make a choice-of-law determination in the present posture. *See, e.g., Cotiviti, Inc.* v. *Deagle*, 501 F. Supp. 3d 243, 255 (S.D.N.Y. 2020) ("[W]hen facts necessary to make [the choice-of-law] determination are sufficiently clear, courts in this District have engaged in this analysis

## C.    Starr's Claims Withstand Defendant's Motion

Starr raises two causes of action against AMIC.  *First*, Starr alleges that AMIC owed and breached a duty to defend R.E. Staite in the California matter and failed to satisfy the costs of such defense as provided by Starr. (SAC ¶¶ 24-26).  Starr further alleges that it is a subrogee of R.E. Staite and therefore is entitled to recover from AMIC the full defense costs of $164,053.77. (*Id.* at ¶ 26).  *Second*, Starr alleges that AMIC was unjustly enriched at the expense of Starr by AMIC's failure to perform its duty as the P&I insurer and concomitant burdening of Starr with the defense responsibility and costs. (*Id.* at ¶¶ 28-29).  For the reasons set forth below, the Court concludes that Starr has pleaded viable claims.

### 1.    Starr States a Viable Claim for Breach of Contract

#### a.    Contract Interpretation Principles

"Under California law, the elements of a cause of action for breach of contract are: '[i] the contract, [ii] plaintiff's performance or excuse for nonperformance, [iii] defendant's breach, and [iv] damage to plaintiff therefrom.'"  *Crosby Est. at Rancho Santa Fe Master Ass'n* v. *Ironshore Specialty Ins. Co.*, 498 F. Supp. 3d 1242, 1252 (S.D. Cal. 2020) (quoting *Wall St. Network, Ltd.* v. *N.Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (2008)).  California law requires that insurance contracts be interpreted in accordance with general principles of contract interpretation.  *Manzarek* v. *St. Paul Fire & Marine Ins.*

---

at the motion to dismiss stage." (citing *Holborn Corp.* v. *Sawgrass Mut. Ins. Co.*, 304 F. Supp. 392, 398 (S.D.N.Y. 2018); *Patel* v. *N.Y. Life Ins. Co.*, No. 11 Civ. 4895 (JPO), 2012 WL 1883529, at *3 (S.D.N.Y. May 21, 2012))).

*Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *MacKinnon* v. *Truck Ins. Exch.*, 73 P.3d 1205, 1212 (Cal. 2003), *as modified on denial of reh'g* (Sept. 17, 2003); *Safeco Ins. Co. of Am.* v. *Robert S.*, 28 P.3d 889, 893 (Cal. 2001)). "[I]nterpretation of an insurance policy is a question of law." *Crosby Est.*, 498 F. Supp. 3d at 1252 (quoting *Waller* v. *Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995), *as modified on denial of reh'g* (Oct. 26, 1995)).  The ultimate goal of interpretation is to "give effect to the 'mutual intention of the parties at the time the contract is formed.'" *Manzarek*, 519 F.3d at 1031 (quoting *MacKinnon*, 73 P.3d at 1213).

Clear, explicit, and unambiguous contractual language is dispositive. *Manzarek*, 519 F.3d at 1031 (citing *Boghos* v. *Certain Underwriters at Lloyd's of London*, 115 P.3d 68, 71 (Cal. 2005); Cal. Civ. Code § 1638).  Where there is ambiguity, however, courts are to interpret contractual terms to "protect the objectively reasonable expectations of the insured." *Boghos*, 115 P.3d at 71 (internal quotation marks omitted).  "[I]f these rules do not resolve a claimed ambiguity," courts should follow the "rule that ambiguities are to be resolved against the insurer." *Id.*; *cf. MacKinnon*, 73 P.3d at 1213 ("[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured.").

### b. AMIC Had a Duty to Indemnify, But Not a Duty to Defend, R.E. Staite

#### i. Existence of a Duty

"Under California law, an insurer may have a duty to defend or a duty to indemnify, or both." *Travelers Prop. Cas. Co. of Am.* v. *Allwire, Inc.*, No. Civ. 19-

9693 (DMG), 2020 WL 8184340, at *4 (C.D. Cal. Dec. 21, 2020) (citing *Buss* v. *Super. Ct.*, 939 P.2d 766, 773 (Cal. 1997)).  In support of its motion to dismiss, AMIC argues that the P&I Policy does not impose upon AMIC an affirmative duty to defend R.E. Staite in legal actions arising out of occurrences covered under the P&I Policy, but rather requires only that AMIC reimburse R.E. Staite after the fact for costs R.E. Staite incurs in defending itself, so long as certain conditions are met.  (Def. Br. 9-11; Def. Reply 2-4).  In opposition to the motion, Starr contends that AMIC had a duty to defend R.E. Staite under the P&I Policy and that the authorities on which AMIC relies to disavow this duty are inapposite.  (Pl. Opp. 10-13).  The Court considers the two duties in turn.

The existence of a duty to defend is a matter of contract.  *Buss*, 939 P.2d at 774 ("This obligation is express in the policy's language.  It rests on the fact that the insurer has been paid premiums by the insured for a defense." (collecting cases)).  *See, e.g., Pan Pac. Retail Props., Inc.* v. *Gulf Ins. Co.*, 471 F.3d 961, 970 n.8 (9th Cir. 2006) (noting that appellants did not challenge the district court's conclusion that the insurers were not obligated to provide a defense for the insured, based on the contractual language of the relevant policies); *Gon* v. *First State Ins. Co.*, 871 F.2d 863, 867-68 (9th Cir. 1989) (analyzing the terms of the insurance policy at issue and finding "no language in the policy stating that [the insurer] will defend any claims"); *Crosby*, 498 F. Supp. 3d at 1252-53 (identifying a conditional duty to defend in the plain language of the policy); *Healy Tibbitts Const. Co.* v. *Foremost Ins. Co.*, 482 F. Supp. 830, 837 (N.D. Cal. 1979) (stating that "the existence of [a duty to

11

defend] is tested according to the insured's reasonable expectation of coverage" under a policy); *Montrose Chem. Corp.* v. *Super. Ct.*, 861 P.2d 1153, 1157 (Cal. 1993) (en banc) ("The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy.").

"A policy with a duty to defend typically contains a clause that provides that the insurer chooses the attorney and controls the strategy of the litigation, a valuable right to protect the insurer's own interests." *Gon*, 871 F.2d at 868.[6] "P&I policies do not ordinarily create a duty to defend and are indemnity policies, not liability policies." *Gabarick* v. *Laurin Mar. (Am.), Inc.*, 650 F.3d 545, 552-53 (5th Cir. 2011); *see also Blair* v. *Suard Barge Servs., Inc.*, No. Civ. A. 03-909 (HGB), 2004 WL 325428, at *8 (E.D. La. Feb. 18, 2004) ("P&I policies do not obligate the underwriter to provide a defense to the assured, only to compensate him for loss.") *cf. Exec. Risk Indem., Inc.* v. *Jones*, 89 Cal. Rptr. 3d 747, 758 (Cal. Ct. App. 2009) ("[U]nlike a standard comprehensive general liability policy, the policy before us is an indemnity-only policy that does not impose a duty to defend upon [the insurer].").

As relevant here, the P&I Policy — which is adapted from the Form SP-23 template issued by the American Institute of Marine Underwriters[7] — provides:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will

---

[6]     Indeed, the CML Policy contains such a clause.  (CML Policy 23).

[7]     The SP-23 template is available at https://www.aimu.org/formsmenu.html (last visited July 13, 2021).

use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

The Assured shall not make any admission of liability, either before or after any occurrence which may result in a claim for which the Assurer may be liable. The Assured shall not interfere in any negotiations of the Assurer, for settlement of any legal proceedings in respect of any occurrences for which the Assurer is liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured are obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance. If the Assured shall fail or refuse to settle any claim as authorized by Assurer, the liability of the Assurer to the Assured shall be limited to the amount for which settlement could have been made.

Whenever required by the Assurer the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Assurer in the defense of any claim or suit … in respect of any occurrence as hereinbefore provided.

The Assured shall not be liable for the cost or expense of … defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible.

The Assurer shall be liable for the excess where the amount deductible under this policy is exceeded by (A) the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or (B) the amount paid by the Assured either under a judgment or an agreed settlement based on the liability covered herein

13

including all costs, expenses of defense and taxable
disbursements.

(P&I Policy, Dkt. #24-2 at 5-6).

The P&I Policy does not expressly require AMIC to defend R.E. Staite.

Instead, it imposes obligations on R.E. Staite to notify AMIC of covered

occurrences and legal process, to conduct itself in certain ways in settlement

negotiations, and to assist AMIC as required if AMIC opts to furnish a defense.

It also sets conditions on when and to what extent R.E. Staite may obtain

reimbursement for defense costs it incurs.  Other courts considering identical

language have held that such terms do not give rise to a duty to defend.  *See*

*Gabarick*, 650 F.3d at 553 n.15 (noting that the district court found that the

modified SP-23 policy in dispute did not provide a duty to defend, and that that

issue was not contested on appeal); *Healy Tibbitts*, 482 F. Supp. at 837 ("[T]he

policy in suit does not Obligate the insurer to undertake the defense of an

action brought against the insured.  It confers the Right upon the insurer to

take over a lawsuit.  But that right is for the benefit of the insurer." (citing

*Kienle* v. *Flack*, 416 F.2d 693, 696 (9th Cir. 1969))).[8]  Thus, the Court

---

[8]     Starr relies most heavily in its opposition memorandum on *Underwriters at Lloyd's* v.
*Denali Seafoods, Inc.*, 729 F. Supp. 721 (W.D. Wash. 1989), *as amended* (Jan. 19,
1990), *aff'd*, 927 F.2d 459 (9th Cir. 1991).  The court in that case found that the marine
indemnity insurance policy at issue gave rise to a duty to defend despite not containing
"express language that the insurer will defend any potentially groundless, false or
fraudulent claim," citing several cases where "general policy language about defending
claims was sufficient to establish the duty."  *Id.* at 724.  This Court notes that the
*Denali* opinion does not provide the operative language in the policy there at issue such
that the Court can compare it to the language in the AMIC P&I Policy.  Furthermore,
the *Denali* court's analysis focuses on the scope of a duty to defend that is presumed to
exist under some circumstances, rather than the antecedent question of whether a duty
exists under *any* circumstances.  *See id.* at 723 (noting that "Underwriters defended the
action under a reservation of right regarding non-coverage of Berry on the grounds that
she was a processor" rather than a covered crew member).  Accordingly, the Court is

14

concludes that AMIC did not have a duty to defend R.E. Staite in the California matter.

This conclusion does not dispose of Starr's breach of contract claim, , however, because Starr also alleges that AMIC breached its contract with R.E. Staite by failing to reimburse the costs of the defense provided by Starr. (SAC ¶ 26).  Although the P&I Policy does not require AMIC to defend R.E. Staite, it does make AMIC liable for defense costs beyond the amount deductible incurred in defense of R.E. Staite, so long as (i) R.E. Staite has obtained AMIC's written consent for the incurred defense costs; (ii) approval cannot be obtained without unreasonable delay; or (iii) the costs are reasonably and properly incurred.  (P&I Policy, Dkt. #24-2 at 6).[9]  *See Gabarick*, 650 F.3d at 553 ("With only a duty to pay covered claims and no duty to defend, reimbursement of defense costs must be footed on the indemnification[.]"); *Healy Tibbitts*, 482 F. Supp. at 837 ("The policy does obligate the insurer to pay the reasonable costs incurred 'in defense against liabilities insured against hereunder.'"); *cf. Gon*, 871 F.2d at 868 ("The obligation actually enforced by the district court's decision was a duty, under the policy, to pay defense expenses incurred.  That ruling is clearly supportable, and we agree with it.").

---

not persuaded that this decision should be given significant weight in the instant analysis.

[9]     The Court is not persuaded by AMIC's argument that Starr's breach of contract claim is not viable because R.E. Staite did not itself incur any defense costs and thus there are no damages.  (*See* Def. Br. 11, 15; Def. Reply 2-3).  R.E. Staite was ultimately liable for any damages and costs arising out of the California matter, even if it contracted with and paid premiums to its insurers in order to shift responsibility for direct payment of these costs.

Accordingly, if Mr. Lerma's claim against R.E. Staite in the California matter falls within the scope of coverage of the P&I Policy, Starr's breach of contract claim may still be viable as a matter of law.

### ii.    Coverage of the Underlying Incident

"Federal admiralty law holds that P&I policies are limited in nature: 'these policies do not purport to cover all types of an insured's liability, but extend only to those liabilities enumerated in the insuring agreement.'" *Republic Ins. Co.* v. *City & County of San Francisco*, No. C 94-2627 (FMS), 1996 WL 655577, at *3 (N.D. Cal. Aug. 26, 1996) (quoting *St. Paul Fire & Marine Ins. Co.* v. *Vest Transp. Co, Inc.*, 666 F.2d 932, 941 (5th Cir. 1982)). In this case, the P&I Policy provides:

> The Assurer hereby undertakes to make good to the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall *as owners of the vessel* named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:
>
> [i] Liability for loss of life of, or personal injury to, or illness [of], any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman)…
>
> [ii] Liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel named herein or any other person.

(P&I Policy, Dkt. #24-2 at 2 (emphasis added)).

The "as owner" language indicates that R.E. Staite is indemnified under the P&I Policy only if its "liability arises out of [its] ownership of an insured

vessel." *City & County of San Francisco* v. *Underwriters at Lloyd's, London*, 141 F.3d 1371, 1372 (9th Cir. 1998) (citing *Bohemia, Inc.* v. *Home Ins. Co.*, 725 F.2d 506 (9th Cir. 1984)).  Accordingly, "only liability connected with negligent operation of listed ships is covered."  *Id.* at 1373 (citing *Bohemia*, 725 F.2d at 510; *Lanasse* v. *Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir. 1971), *reh'g denied* (Jan. 12, 1972); *Wedlock* v. *Gulf Miss. Marine Corp.*, 554 F.2d 240, 243 (5th Cir. 1977), *abrogation recognized by Hardy* v. *Gulf Oil Corp.*, 949 F.2d 826 (5th Cir. 1992)); *see also Republic Ins. Co.*, 1996 WL 655577, at *4 (explaining that P&I policies have been held to require "some causal operational relation between the vessel and the resulting injury" (quoting *Lanasse*, 450 F.2d at 584)).  "The occurrence of an accident on board an insured vessel," without more, "has repeatedly been held insufficient to trigger coverage under similar P&I policies."  *Republic Ins. Co.*, 1996 WL 655577, at *4 (citing *Lanasse*, 450 F.2d at 584; *Reliance Ins. Co.* v. *Alan*, 272 Cal Rptr. 65, 68 (Cal. Ct. App. 1990), *disapproved on other grounds by Buss*, 939 P.2d 766); *see also Lanasse*, 450 F.2d at 584 (holding that "the vessel must be more than the inert locale of the injury" to give rise to shipowner liability).

Even with these limitations, the Court finds that Starr has alleged a sufficient nexus between Mr. Lerma's injury and R.E. Staite's ownership of an insured vessel.  Here, Starr alleges that: (i) Mr. Lerma was "assisting in the repair of a crane on [a] barge … when he was struck by [the shoreside] crane's hoist drum which was being loaded onto the barge for replacement on the crane" (SAC ¶ 9); (ii) the barge on which Mr. Lerma stood was owned by R.E.

17

Staite or one of its subsidiaries and was insured under the P&I Policy

(*id.* at ¶ 13); (iii) the allegedly negligent spotter "was positioned on the barge

under repair while the [shoreside] crane operator moved the barge crane's hoist

drum to that barge as part of the crane repair" (*id.* at ¶ 14); and (iv) the barge

under repair was also owned by R.E. Staite and insured under the P&I Policy

(*id.* at ¶ 15).[10]  In short, as alleged by Starr, Mr. Lerma was injured during

operations to repair a crane aboard a vessel owned by R.E. Staite and insured

---

[10]     The Court notes that many of Starr's allegations are not drawn from the Lerma
Complaint, Starr's representations notwithstanding.  The Lerma Complaint alleges only
that Mr. Lerma was injured when

> he was struck by a hoist drum which was negligently moved
> by a shoreside crane operated by [R.E. Staite] … while he
> was repairing another crane on a barge in navigable waters
> in San Diego, California.  The crane operator and crane
> spotter for the shoreside crane were employees of
> defendants R.E. Staite Engineering Inc. and … therefore
> said defendants are liable for the negligent and unsafe
> operation of said shoreside crane which caused plaintiff's
> injuries under the doctrine of [respondeat] superior.

(Lerma Compl. ¶ 7).  In contrast to Starr, Mr. Lerma does not allege: (i) that the barge
on which he was working was owned by R.E. Staite and insured by AMIC under the P&I
Policy; (ii) that there was a second barge besides the one on which he was working, and
that such second barge was also owned by R.E. Staite and insured by AMIC under the
P&I Policy; (iii) that he was assisting in the repair of a crane on the second barge, as
opposed to a crane on the barge on which he stood; (iv) that the spotter for the
shoreside crane was standing on a barge; or (v) that the shoreside crane was involved in
operations to repair the barge on which Mr. Lerma stood and/or a second barge.
(*Compare* Lerma Compl. ¶¶ 1-10, *with* SAC ¶¶ 9-15).

Nevertheless, the allegations in the SAC and the Lerma Complaint are not so at odds
that the SAC must be discredited.  *Cf. Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d
140, 147 (2d Cir. 2011) ("[W]here a conclusory allegation in the complaint is
contradicted by a document attached to the complaint, the document controls and the
allegation is not accepted as true.").  The California matter was dismissed shortly before
trial, *see Lerma* v. *R.E. Staite Eng'g, Inc.*, Case No. 37-2017-00048669-CU-PO-CTL (Cal.
Super. Ct. San Diego, filed Dec. 18, 2017), and the Court considers the possibility that
the divergences between the Lerma Complaint and the SAC are the result of discovery
in the California matter.  Because the allegations in the Lerma Complaint and the SAC
are not plainly contradictory, even if noticeably different, the Court accepts Starr's
allegations as true for the purpose of this motion.  Whether Starr's allegations are, in
fact, true — and thus whether the requisite nexus actually exists between Mr. Lerma's
injury and operations covered by the P&I Policy — remains to be proven at a later stage
of this litigation.

under the P&I Policy.  The fact that the negligent operation of the shoreside crane allegedly occurred in the course of repairing an insured vessel differentiates this case from *Lanasse*, in which the Fifth Circuit found that "the negligent operation of the crane — the proximate cause of the injury — … was not even remotely related to the operation, navigation or management of the [insured] vessel." 450 F.2d at 583.  Given the alleged nexus between Mr. Lerma's injury and actions to repair an insured barge, the Court concludes that the underlying claim is potentially within the ambit of the P&I Policy.  *See St. Paul Ins. Co.* v. *Am. Fid. Ins. Co.*, 105 F.3d 654 (5th Cir. 1996) (nonprecedential opinion pursuant to 5th Cir. R. 47.5) (explaining that "as owner" liability exists where there is a "causal connection between the action that gave rise to the liability and the ownership, operations, *maintenance*, or use of the vessel" (emphasis added) (citing *Lanasse*, 450 F.2d at 584)); *accord Tilcon N.Y., Inc.* v. *Indem. Ins. Co. of N. Am.*, No. 3:14 Civ. 1296 (JBA), 2017 WL 1948420, at *9 (D. Conn. May 10, 2017) (finding the injury at issue to be covered by a P&I policy "[u]nder either the 'causal operational relation' test of *Lanasse* or the more eclectic historical approach of the Second Circuit," where the injured party was handling cargo aboard an insured vessel and was struck by a cable used to maneuver the barge safely during cargo loading).

### iii.    AMIC's Affirmative Defenses

AMIC further argues that even if Mr. Lerma's claim against R.E. Staite were covered by the P&I Policy and as such could trigger AMIC's duty to indemnify for defense costs, R.E. Staite failed to comply with the P&I Policy's

19

requirements that R.E. Staite provide timely notice of the California matter to AMIC, obtain AMIC's written consent to incur reimbursable defense costs, and take action to recover against AMIC within one year of incurring defense costs associated with the California matter. (Def. Br. 15-17). Starr responds that AMIC's allegations of untimely notice and lack of written consent are affirmative defenses that rely on facts outside Starr's pleading and thus may not be considered in a motion to dismiss under Rule 12(b)(6). (Pl. Opp. 16-17). The Court agrees with Starr on this point and concludes that AMIC's arguments regarding notice and consent are properly the subject of a summary judgment motion rather than a motion to dismiss. *See Frederic* v. *NFC Amenity Mgmt.*, No. 17 Civ. 5769 (AJN), 2018 WL 4735715, at *2 (S.D.N.Y. Sept. 28, 2018) ("[A]n affirmative defense relying on evidence beyond the pleadings is not suitable for resolution under Rule 12(b)(6)[.]" (citing *Jones* v. *Bock*, 549 U.S. 199, 215 (2007))); *see also ASARCO, LLC* v. *Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint."). *Cf. Safeco Ins. Co. of Am.* v. *Super. Ct.*, 44 Cal. Rptr. 3d 841, 846 (Cal. Ct. App. 2006) ("[I]n an action for equitable contribution by a settling insurer against a nonparticipating insurer, the settling insurer has met its burden of proof when it makes a prima facie showing of coverage under the nonparticipating insurer's policy ... and [] the burden of proof then shifts to the nonparticipating insurer to prove the absence of actual coverage.").

### c.    Starr Has a Claim for Equitable Subrogation

Having concluded that Starr has adequately pleaded that AMIC violated a duty to indemnify R.E. Staite for defense costs arising out of the California matter, the Court next turns to Starr's assertion that it is subrogated to R.E. Staite's rights under the P&I Policy and thus is entitled to recover from AMIC the full costs incurred in the defense of R.E. Staite.  (SAC ¶ 26).

Under California law, the doctrine of equitable subrogation "allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss." *Md. Cas. Co.* v. *Nationwide Mut. Ins. Co.*, 97 Cal. Rptr. 2d 374, 377 (Cal. Ct. App. 2000) (citing *Fireman's Fund Ins. Co.* v. *Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 302 (Cal. Ct. App. 1998)).  In order to take advantage of the doctrine, "[t]he moving party insurer must show the other insurer was *primarily* liable for the loss and that the moving party's equitable position is *inferior* to that of the second insurer." *Id.* (citing *Fireman's Fund.*, 77 Cal. Rptr. 2d at 302, 305).  Because a primary insurer "must bear 100 percent of the defense costs until the primary limits have been exhausted," *id.* (citing *Signal Cos., Inc.* v. *Harbor Ins. Co.*, 612 P.2d 889, 894 (Cal. 1980) (en banc), and *Hartford Accident & Indem. Co.* v. *Super. Ct.*, 29 Cal. Rptr. 2d 32, 34-35 (Cal. Ct. App. 1994)), "an excess insurer that pays defense costs will

frequently obtain a full recovery against the primary insurer on an equitable subrogation theory," *id.*[11]

Starr claims the doctrine applies in this case because, "[p]ursuant to the 'Other Insurance' provision of the CML Policy, where, as here, more than one policy provides coverage for a dispute, the Starr policy acts as excess insurance to the other, and does not contribute until the other policy is exhausted." (SAC ¶ 22; *see* CML Policy 25).  The "Other Insurance" provision provides, in pertinent part: "If other valid and collectible insurance with any other insurer is available to the Assured *covering a loss also covered by this policy* … the Insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or elsewhere."  (CML Policy 25 (emphasis added)).

AMIC argues that the "Other Insurance" provision does not apply and thus cannot provide a basis for Starr's subrogation claim.  In its opening brief, AMIC emphasizes the "also covered by this policy" language and claims that

---

[11]    In opposing application of the subrogation doctrine, AMIC argues that "the Second Circuit has explained that 'co-insurers cannot recover from one another on a subrogation theory because they are not seeking reimbursement from a third-party wrongdoer.'"  (Def. Br. 18 n.12 (quoting *Nat'l Cas. Co.* v. *Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2006)).  However, context indicates that the principle is not as sweeping as AMIC suggests.  In *National Casualty Co.* and the cases cited therein, courts rejected a subrogation theory where the co-insurer parties were all primarily and directly liable under their respective policies.  *See Nat'l Cas. Co.*, 466 F. Supp 2d at 540; *Vigilant Ins. Co.* v. *Emp'rs Ins. of Wausau*, 626 F. Supp. 262, 268 (S.D.N.Y. 1986); *Am. Dredging Co.* v. *Fed. Ins. Co.*, 309 F. Supp. 425, 428 (S.D.N.Y. 1970).  In such situations, the appropriate cause of action was for equitable contribution, rather than for subrogation.  *See, e.g., Nat'l Cas. Co.*, 466 F. Supp. at 540-41 ("New York law recognizes a cause of action for pro rata contribution when a co-insurer pays more than its fair share for a loss covered by multiple insurers.").  In any case, those cases apply New York law rather than California law, and the latter governs in this case.

the provision is inapplicable because "the P&I Policy and the CML Policy do not insure the same risks."  (Def. Br. 13-14).  As discussed previously, the Court finds that Starr has sufficiently alleged that the P&I Policy covers the occurrence that was the subject of the California matter.  AMIC pivots in its reply brief, however, to focus on what constitutes a "loss" covered by the CML Policy.  Specifically, AMIC argues that the term "loss" is confined to damages that R.E. Staite becomes liable to pay as a result of an action against it; the term thus excludes defense costs.  (Def. Reply 6).  In AMIC's view, because the California matter was dismissed without a finding of liability against R.E. Staite, the "Other Insurance" provision was not triggered.  The Court finds this argument unavailing.  Unlike many other terms of art set forth in the CML Policy, including "defense costs" (*see* CML Policy 27), "loss" is not defined anywhere, nor does it appear in quotation marks as do the other terms with special meaning.  The Court believes that "loss" should be understood more broadly than AMIC contends, to include any costs arising out of occurrences covered by the Policy, including both damages and defense costs.  If the "Other Insurance" provision was to apply only when there was a judgment of damages, the provision could have referred specifically to damages.  Instead, it refers generically to loss.  Accordingly, the Court concludes that the "Other Insurance" provision applies whenever an occurrence triggers duties and expenditures within the scopes of the CML Policy as an excess policy and of a separate primary insurance policy.  *Cf. Md. Cas. Co.*, 97 Cal. Rptr. 2d at 377

23

(considering both liability coverage and defense costs as relevant costs for purposes of burden-shifting through equitable subrogation).

With this understanding, the Court finds that Starr has adequately pleaded that the CML Policy establishes Starr as an excess insurer on expenditures covered by other primary insurance. Thus, to the extent the P&I Policy covers Mr. Lerma's claim against R.E. Staite — and to reiterate, the Court concludes that Starr's allegations on this question are sufficient to survive a Rule 12(b)(6) motion — AMIC was primarily liable for the costs of defending R.E. Staite in the California matter. Consequently, Starr may seek reimbursement from AMIC on an equitable subrogation theory.

In sum, with respect to Starr's breach of contract claim against AMIC, the Court finds that Starr has adequately pleaded that: (i) AMIC owed a duty to indemnify R.E. Staite for costs incurred in defending against claims arising out of occurrences covered by the P&I Policy; (ii) Mr. Lerma's claim in the California matter potentially fell within the coverage scope of the P&I Policy; and (iii) Starr may, as a subrogee of R.E. Staite, seek reimbursement from AMIC for defense costs Starr incurred on R.E. Staite's behalf in the California matter. Therefore, AMIC's motion to dismiss Starr's breach of contract claim is denied.

### 2. Starr States a Viable Unjust Enrichment Claim

For its second cause of action, Starr claims that "[b]y failing to pay the defense cost pursuant to its duty as the P&I insurer and instead, requiring Starr to incur these costs, [AMIC] has been unjustly enriched at the expense of

Starr." (SAC ¶ 28).  AMIC moves to dismiss this claim on the basis that Starr has failed to plead a viable claim of unjust enrichment.  (Def. Br. 18-20).[12]

Under California law, plaintiffs are permitted to plead claims for breach of contract and unjust enrichment in the alternative.  *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (citing *Bruton* v. *Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017) (unpublished decision); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017); *Hartford Cas. Ins. Co.* v. *J.R. Mktg., L.L.C.*, 353 P.3d 319, 326 (2015)).  "The elements for a claim of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another."  *Prakashpalan* v. *Engstrom, Lipscomb & Lack*, 167 Cal. Rptr. 3d 832, 855 (Cal. Ct. App. 2014) (internal quotation marks omitted), *as modified on denial of reh'g* (Feb. 27, 2014); *accord Mossimo Holdings, LLC* v. *Haralambus*, No. 14 Civ. 5912 (DDP) (JE), 2017 WL 1240739, at *8 (C.D. Cal. Apr. 4, 2017); *Sullivan* v. *Barclays PLC*, No. 13 Civ. 2811 (PKC), 2017 WL 685570, at *36 (S.D.N.Y. Feb. 21, 2017) (applying New York and California law).  "The theory of unjust enrichment requires one who acquires a benefit which may not justly be

---

[12]   AMIC points out in reply that Starr does not address unjust enrichment in its opposition memorandum.  (Def. Reply 4).  When a plaintiff fails to respond to an argument raised in a motion to dismiss, a court may, but is not required to, treat this failure as abandonment of the relevant claims.  *See, e.g., Black Lives Matter* v. *Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) (deeming claims abandoned at the motion to dismiss stage); *Brandon* v. *City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (same); *Lipton* v. *County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("Application of this proposition is, however, tempered by this Court's discretion[.]").  Here, the Court declines to dismiss Starr's unjust enrichment claim because it is the obverse of its breach of contract claim and will not require additional discovery or otherwise impose additional burdens in the litigation.  Accordingly, the Court examines the viability of the unjust enrichment claim as pleaded.

retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." *Prakashpalan*, 167 Cal. Rptr. 3d at 855 (quoting *Otworth* v. *S. Pac. Transp. Co.*, 212 Cal. Rptr. 743 (1985)). "Ordinarily, restitution is required only if the benefits were conferred by mistake, fraud, coercion or request." *Id.* (internal quotation marks omitted); *see also Hartford Cas. Ins. Co.*, 353 P.3d at 326 ("Restitution is not mandated merely because one person has realized a gain at another's expense. Rather, the obligation arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" (quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1, cmt. b, p. 6 (2011))).

AMIC's arguments in favor of dismissal are unavailing. *First*, while it is true, as AMIC argues, that Starr does not allege that "its defense of the Assured was for AMIC, that the defense was undertaken at the behest of AMIC, nor that AMIC assumed an obligation to pay Starr for services AMIC received" (Def. Br. 19), AMIC nevertheless received a benefit from Starr's defense of R.E. Staite: it did not have to pay the defense costs that accrued in the California matter and/or the damages that potentially could have resulted had the California matter not been voluntarily dismissed, as it may have been obligated to do under the P&I Policy. *Second*, AMIC claims that its enrichment at Starr's expense cannot be deemed unjust because "Starr's bearing of bargained for defense costs is consistent with Starr's obligation under the CML policy." (*Id.*). But, as discussed above, the contract Starr bargained for, *i.e.* the CML Policy, provides that Starr is an excess insurer, rather than a primary insurer, in

26

cases where R.E. Staite has redundant coverage.  Starr's duty to defend R.E. Staite, and to bear the costs of doing so, is subject to the condition set forth in the "Other Insurance" provision of the CML Policy.  Thus, it was at least arguably in error for R.E. Staite to notify Starr rather than AMIC of Mr. Lerma's claim, and to burden Starr with the resulting defense costs.[13]  As such, Starr adequately alleges that it paid defense costs that AMIC properly should have indemnified.  *Cf. Buss*, 939 P.2d at 776 ("With regard to defense costs for these claims, the insurer … did not bargain to bear these costs.  To attempt to shift them would not upset the arrangement." (addressing the right of an insurer to receive restitution from an insured for defense costs expended on claims not potentially covered by the policy)).

Accordingly, the Court finds that Starr has pleaded a viable claim for unjust enrichment.  AMIC's motion to dismiss this claim is denied.

---

[13]  As pleaded in the SAC, once Starr became aware of the P&I Policy, it "advised the broker that the claim was opened under the wrong policy and that the claim should be handled by [AMIC] under the P&I Policy.  The broker, in turn, advised [AMIC] which rejected the tender of defense."  (SAC ¶ 18).

**CONCLUSION**

For the foregoing reasons, AMIC's motion to dismiss is DENIED.  The Clerk of Court is directed to terminate the motion at docket entry 27.  AMIC is hereby ORDERED to file a responsive pleading on or before **August 4, 2021**. Further, the parties are hereby ORDERED to submit a proposed case management plan to the Court on or before **August 11, 2021**.

SO ORDERED.

Dated:      July 14, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

28